Case 4:18-cv-02468   Document 81   Filed on 05/18/20 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
May 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAIJA JACKSON, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> THE UNITED STATES DEPARTMENT § <br> OF HOUSING AND URBAN § <br> DEVELOPMENT, *et al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 4:18-CV-2468 |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant the United States Department of Housing and Urban Development's Motion to Dismiss First Amended Complaint. Dkt. 63. After reviewing the motion, the response, the reply, and the applicable law, the Court **GRANTS** the motion.

### **Statutory Background**

In 1974, Congress created the Section 8 housing program "[f]or the purpose of aiding low-income families in obtaining a decent place to live." 42 U.S.C. § 1437f(a); Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 201(a), 88 Stat. 662 (1974) (amending the United States Housing Act of 1937) (codified as amended at 42 U.S.C. § 1437f). The program, which is funded by the Department of Housing and Urban Development ("HUD") and administered by local public housing authorities ("PHAs"), 24 C.F.R. § 982.1(a)(1), generally provides two different types of rental assistance: "project-based" subsidies and "tenant-based" subsidies. *Id.* § 982.1(b)(1).

Project-based assistance is tied to specific housing developments or units. 42 U.S.C. § 1437f(f)(6); 24 C.F.R. § 982.1(b)(1). Owners of such properties enter into long-term contracts with the applicable PHA, under which the owners agree to rent their properties to eligible low-income families and the PHA agrees to provide rental assistance payments to the owners on behalf of the assisted tenants. *See* 42 U.S.C. § 1437f(b); 24 C.F.R. §§ 983.202, 983.205. The owners then enter written leases with particular families for individual units. *See* 24 C.F.R. § 983.256.

Tenant-based assistance, by contrast, is tied to a specific tenant family and travels with the family if it moves. 42 U.S.C. § 1437f(f)(7); 24 C.F.R. § 982.1(b). Tenant-based vouchers may be used on rental units anywhere in the United States, so long as the unit is in the jurisdiction of a PHA that administers a voucher program. 24 C.F.R. § 982.1(b)(1). Once the assisted family selects an eligible unit and the applicable PHA approves the tenancy, the PHA enters into a contract with the property owner, under which the PHA agrees to make rental assistance payments to the owner. *Id.* § 982.1(b)(2). Unlike long-term PHA contracts for project-based assistance, a PHA contract for tenant-based assistance can provide for a term as short as one year, and the contract covers only the single unit and the particular assisted family. *See id.* §§ 982.1(b)(2), 982.309(a). But as with project-based assistance, in addition to the PHA contract, the property owner also enters a written lease with the assisted family. *Id.* § 982.308(b).

Under both project-based and tenant-based assistance, the assisted family contributes a prescribed amount toward the overall rental payment, generally equal to thirty percent of the tenant family's monthly "adjusted income" or ten percent of its

monthly gross income, whichever is greater. 42 U.S.C. § 1437f(o)(2); *see also* 42 U.S.C. § 1437a(a)(1). The government pays the balance of the rent up to a statutorily capped amount known as the "payment standard," which normally cannot exceed 110 percent of the fair market rental value for the property, as established by HUD. *See* 42 U.S.C. § 1437f(c), (o)(1)–(2).

Two additional aspects of Section 8 housing are relevant to this action. The first is a regulation prescribing that owners of properties in which Section 8 tenants live are required to "maintain and operate the project so as to provide decent, safe, and sanitary housing," and to "provide all the services, maintenance, and utilities which he or she agrees to provide under the contract and the lease." 24 C.F.R. § 886.323(a). Failure to do so triggers HUD's authority to notify the owner that he or she has failed to maintain the dwelling in a decent, safe, and satisfactory condition, and to prescribe a certain amount of time for the owner to take corrective action. 24 C.F.R. § 886.323(e).

The second is Section 8(bb), which provides that if a *project*-based Section 8 housing assistance payments (HAP) contract expires, is terminated, or is not renewed and there is budget authority (authority to spend a specific amount of money on housing assistance) remaining on the contract, HUD shall transfer the unused budget authority to another contract to provide continued assistance to eligible families, including families residing in the original project when the contract ended. 42 U.S.C. § 1437f(bb).

## Plaintiffs' Complaint

Plaintiffs are current or former tenants at a housing project just northwest of the intersection of Beltway 8 and the Hardy Toll Road, called Arbor Court Apartments.

Taking Plaintiffs' Amended Complaint as true for purposes of deciding this motion to dismiss, they allege the following.

Arbor Court Apartments (Arbor Court) is a privately-owned, multifamily residential rental building. It is owned by an entity named DM Arbor Court (DM), which has maintained HUD project-based rental assistance at Arbor Court Apartments since 1980. Arbor Court is in a predominantly minority and high-poverty census tract, and in a high crime area. Compl. ¶¶ 1 – 2, 29.

After the "Tax Day floods" in April 2016 and Hurricane Harvey in August 2017, Arbor Court became uninhabitable. In October 2017, HUD officials inspected the property. On November 22, 2017, HUD issued a Notice of Default "constitut[ing] formal notice . . . that the Owner of the said property is in default of the HUD Housing Assistance Payments Contract's" requirements that the owner "provide decent, safe, and sanitary housing." Compl. ¶¶ 38–40.[1]

HUD did not take any enforcement action based on the November 22, 2017 Notice. Compl. ¶ 41. HUD issued a second Notice of Default on October 18, 2018. Compl. ¶ 42. This Notice required Arbor Court to complete negotiations with the City of Houston to address the permitting issues, demonstrate that the appropriate building permits had been received, and provide a detailed rehabilitation plan. Compl. ¶ 42. The Notice warned that if DM failed to take these steps, "the Section 8 assistance contract may be reduced, suspended, abated, or terminated under the above referenced HAP

---

[1] DM alleges that it has failed to complete the renovations needed to bring Arbor Courts into compliance with HUD's Notice of Default because the City of Houston refused to issue the necessary permits. *See* Dkt. 66 ¶¶ 14–15.

contract provisions, and any other remedies may be taken as provided by law." Compl. ¶ 42.

Plaintiffs allege that DM has not taken the steps required by the Notice of Default, and HUD has not availed itself of the remedies available under 24 C.F.R. section 886.323. Instead, Plaintiffs allege, DM applied to transfer the budget authority for the HAP contract from Arbor Court to a building called Cullen Park Apartments under Section 8(bb). Compl. ¶ 51. Plaintiffs assert that Cullen Park is not decent, safe, or sanitary, and is in a predominantly minority, high-poverty census tract. Compl. ¶ 50. Arbor Court management held a tenant meeting on January 10, 2019, about the proposed transfer. DM also issued notice of the proposed transfer to all Arbor Court tenants, soliciting comments, and Plaintiffs' counsel submitted comments opposing the transfer. Compl. ¶¶ 48–52.

Over Plaintiffs' objections, HUD approved the Section 8(bb) transfer to Cullen Park. Compl. ¶ 48. As part of the Section 8(bb) transfer, HUD has offered Arbor Court tenants a choice. If a tenant chooses to relocate to Cullen Park, DM will pay the tenant's relocation expenses. If a tenant chooses not to move to Cullen Park, he or she may apply for a tenant-based voucher, which would subsidize the tenant's rent at any Section 8-participating unit of his or her choice. Tenants who elect the tenant protection voucher would not receive relocation assistance to the unit of their choice. Compl. ¶¶ 50–52.

Plaintiffs allege that without the relocation assistance, those who do not want to move to Cullen Park will be unable to obtain decent, safe, and sanitary housing outside of a racially-concentrated, high-poverty, high-crime area. Compl. ¶¶ 67–70.

Plaintiffs raise a claim that HUD's decision to approve the transfer to Cullen Park violates the Fair Housing Act and the Fifth Amendment because it perpetuates racial segregation and that this decision, along with the distribution of HUD's PBRA projects throughout Houston, reflect HUD's "intentional support for racial segregation." Compl. ¶ 106. In support of that claim, Plaintiffs allege that HUD is treating Plaintiffs, who are black and Hispanic, differently from how HUD treats tenants in similarly situated, predominantly white, non-Hispanic projects. Compl. ¶ 100.

Plaintiffs allege that forty-two of forty-four PBRA buildings in Houston are located in predominantly minority census tracts, have disproportionately Black tenants, and are adversely affected by "various unequal neighborhood living conditions." Compl. ¶ 108, Dkt. 70 at 20. The other two buildings are restricted to elderly tenants only. Compl. ¶ 108.

Plaintiffs allege that White low-income tenants, on the other hand, are provided decent, safe, and sanitary PBRA housing in neighborhoods outside of flood plains or flood ways, and with lower crime rates. Compl. ¶¶ 100–02. Plaintiffs point to the Woodlands, where HUD maintains six PBRA units in census tracts with majority-white populations, four of which have majority-White tenant populations, and all of which Plaintiffs allege are in decent, safe, and sanitary condition, outside of flood plains and flood ways. Compl. ¶¶ 100–02. Plaintiffs allege that two of these projects have 37% and 29% White, non-Hispanic tenant populations. Compl. ¶ 100.

Plaintiffs allege that Cullen Park, by contrast, is located in a "predominantly minority, high poverty census tract." Compl. ¶ 50. They allege that HUD "could have

transferred the [project-based rental assistance] contract to a non-racially concentrated location but chose to transfer the PBRA [twenty-four] miles from Arbor Court to another racially concentrated location." Compl. ¶ 76.

As circumstantial evidence that HUD's refusal to provide relocation assistance is motivated by racial animus, Plaintiffs also allege certain historical factors. Compl. ¶¶ 106, 111. Plaintiffs allege that HUD violated its own site-selection regulations in deciding where to place PBRA housing, which is concentrated in majority-minority areas. Compl. ¶¶ 112–15. Plaintiffs allege that HUD's decision to place Arbor Court in a flood plain, and to renew its PBRA contract with Arbor Court, tends to show that HUD is racially discriminating against Arbor Court tenants. Compl. ¶¶ 117–19. They allege that HUD's decision to maintain Arbor Court as a PBRA violated regulations requiring HUD-assisted buildings to be located in neighborhoods not subject to serious adverse environmental conditions, because Arbor Court is located in an official flood plain. Compl. ¶¶ 121–22. They allege that HUD is aware of the challenges facing minority residents who seek affordable housing outside of areas of minority concentration due, in part, to a letter HUD itself wrote to City of Houston officials in 2011. Compl. ¶¶ 126–28.

Plaintiffs seek review of HUD's final agency action, which they allege is "withholding the relief of the relocation assistance from Plaintiffs" (Compl. ¶ 28; *see also* ¶¶ 129–32) in conjunction with issuing the Notices of Default. Compl. ¶¶ 59–61. Plaintiffs assert that HUD's actions violate the Fair Housing Act—specifically 42 U.S.C. section 3604(a), 42 U.S.C. section 3608(e)(5)—and the Equal Protection Clause of the Fifth Amendment of the U.S. Constitution. Plaintiffs seek: (1) an injunction that HUD

provide relocation assistance along with the housing choice voucher necessary to obtain affordable, decent, safe, and sanitary housing; (2) an order that Arbor Court pay Plaintiffs back all rent or deposits; and (3) a declaratory judgment that HUD's refusal to provide housing vouchers *and* relocation assistance violates the Fair Housing Act and the United States Constitution.

## Standard of Review

HUD moves to dismiss for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because this is a case in which the "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (ellipses omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). "[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion . . . when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (internal citations omitted); *see also Sawan v. Chertoff*, 589 F. Supp. 2d 817, 825 (S.D. Tex. 2008) (Rosenthal, J.) (citing *Holt* and converting Rule 12(b)(1) motion to Rule 12(b)(6) motion to analyze the defendants' argument that court lacked jurisdiction because the plaintiffs had failed to state a claim under the Administrative Procedure Act, among other statutes).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted).

## Analysis

I. **The APA does not waive sovereign immunity as to Plaintiffs' claims.**

"[T]he United States may not be sued except to the extent that it has consented to suit by statute." *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 488 (5th Cir. 2014). Further, "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Id.* The APA "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review." *Id.*

Plaintiffs' cause of action arises, in part, under Section 706 of the APA. HUD argues that this Court lacks subject-matter jurisdiction over Plaintiffs' APA claims because Plaintiffs have not alleged a claim under the appropriate provisions of the APA. To determine whether HUD is correct, the Court must first resolve the parties' dispute whether Plaintiffs' claims arise under the APA's sub-section 706(1) or 706(2)(A). The distinction matters because it will determine the standard against which the Court evaluates the Plaintiffs' allegations.

### A. The Plaintiffs' claims arise under Section 706(1).

The Administrative Procedure Act authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Where no other statute provides a private right of action, the "agency action" complained of must be "*final* agency action." § 704 (emphasis added).

The APA provides relief for an agency's failure to act in § 706(1): "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Otherwise, the reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Review is not available, however, "to the extent that" a relevant statute precludes it, or the agency action is "committed to agency discretion by law." §§ 701(a)(1), 701(a)(2).

Plaintiffs' Complaint does not specify under which sub-section they sue, but their response to HUD's motion states that they seek relief under Section 706(2). HUD argues

that Plaintiffs' claims arise under Section 706(1), and therefore may "proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Aliance*, 542 U.S. 55, 64 (2004) (emphasis in original). HUD argues that Plaintiffs cannot meet that standard because they have cited no authority requiring HUD to take the actions Plaintiffs seek to enjoin.

Plaintiffs assert that they have identified several final agency actions warranting review under 706(2). First, they state that they seek review of HUD's final agency action of withholding tenant protection vouchers from Plaintiffs despite Arbor Court's noncompliance with HUD's Notice of Default. Similarly, they contend that they seek review of HUD's final agency action of withholding relocation assistance from Plaintiffs who choose to accept a tenant protection voucher and choose not to move to Cullen Park.

Plaintiffs frame the relief they seek as "setting aside" the "withholding" of relocation assistance. But such an order from this Court would actually constitute an injunction compelling HUD to provide tenant protection vouchers and relocation assistance to tenants who choose not to move to Cullen Park. That is not the relief that Section 706(2) affords. *See, e.g.*, *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1301 (9th Cir. 2013) (construing plaintiffs' 706(2) claim as a 706(1) claim because they sought injunction compelling agency to provide drainage, and so "there is no agency action for us to 'set aside'").

Finally, Plaintiffs state that they challenge HUD's decision to transfer HUD's Housing Assistance Project contract funds from Arbor Court to Cullen Park under Section 8(bb). Dkt. 70 at 8. While this may be a final agency action that could be set

aside, Plaintiffs' Complaint does not ask this Court to set aside HUD's Section 8(bb) transfer to Cullen Park.

"A 'failure to act,'" which triggers Section 706(1) review, "is not the same thing as a 'denial'" triggering 706(2) review. *Norton*, 542 U.S. at 63. "The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request." *Id.* Plaintiffs do not allege that HUD formally rejected a request for relocation assistance. They want this Court to review HUD's omission of an action—providing relocation assistance.

Plaintiffs' claims are properly construed as arising under Section 706(1).

### B. Plaintiffs have not stated a claim under Section 706(1).

HUD argues Plaintiffs have not sufficiently pleaded a claim under Section 706(1) because they have not alleged that HUD failed to take a discrete agency action that it was required to take. In response, Plaintiffs state that they "are not arguing that the Court can compel relocation assistance under Section 706(1)." Dkt. 70 at 15. Nonetheless, their Complaint and briefing assert that 24 C.F.R. 886.323(e) requires HUD to provide relocation assistance to Plaintiffs. Since the Plaintiffs' Complaint does not specify whether their claim arises under Section 706(1) or 706(2), the Court proceeds to determine whether Plaintiffs' Complaint sufficiently alleges a claim under Section 706(1).

Again, Section 706(1) authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5. U.S.C. § 706(1). A claim for an agency's failure to

act can proceed "only where a plaintiff asserts than an agency failed to take [1] a discrete agency action [2] that it is required to take." *Norton*, 542 U.S. at 62 (emphasis omitted).

Plaintiffs seek to compel the agency action of assisting Plaintiffs to relocate from their current dwelling units in Arbor Court Apartments to a unit outside of Cullen Park. HUD argues it is not required to take that action.

### i. The agency action is required.

Plaintiffs allege that several statutes and regulations require HUD to relocate Plaintiffs to a location other than Cullen Park: the 2018 and 2019 Appropriations Acts, which are identical in relevant part; 42 U.S.C. sections 3604(a) and 3608(e)(5); and 24 C.F.R. section 886.323(e).

The Appropriations Acts provide that HUD "*may* provide section 8 rental assistance from amounts made available under this paragraph for units assisted under a project-based subsidy contract . . . ." Consolidated Appropriations Act of 2019, Pub. L. No. 116-6, 133 Stat. 13 (emphasis added); *see also* Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Sat. 348.

42 U.S. Code section 3604(a) broadly prohibits discrimination in the sale or rental of housing and other prohibited practices. Section 3608(e) mandates certain broad programmatic functions of the Secretary of Housing and Urban Development, such as "mak[ing] studies with respect to the nature and extent of discriminatory housing practices" throughout the country, publishing an annual report to Congress about progress in eliminating discriminatory housing practices, and cooperating with other agencies to prevent or eliminate discriminatory housing practices. 42 USCA § 3608(e).

None of these authorities mandate that HUD provide relocation assistance under the circumstances Plaintiffs allege in this case.

Plaintiffs' allegations therefore depend on 24 C.F.R. section 886.323, which requires the owner of a Section 8-assisted dwelling unit to "maintain and operate the project so as to provide decent, safe, and sanitary housing," and requires HUD to annually inspect the project. 24 C.F.R. § 886.323(a), (d). It contains the following enforcement provision:

> If HUD notifies the owner that he/she has failed to maintain a dwelling unit in decent, safe, and sanitary condition, and the owner fails to take corrective action within the time prescribed in the notice, HUD may exercise any of its rights or remedies under the contract, or Regulatory Agreement, if any, including abatement of housing assistance payments (even if the family continues to occupy the unit) and rescission of the sale. If, however, the family wishes to be rehoused in another dwelling unit, HUD shall provide assistance in finding such a unit for the family.

24 C.F.R. § 886.323(e).

Plaintiffs allege that HUD issued a Notice of Default against Arbor Court requiring DM to rehabilitate the building, and that since DM failed to satisfy the Notice of Default's requirements, Section 886.323(e) requires HUD to assist Plaintiffs with relocating to another dwelling unit. HUD argues that 886.323(e) does not apply because it would only require HUD to provide relocation assistance if HUD had abated the housing assistance payment contract as a result of enforcement action against DM. Instead, HUD asserts, it approved a Section 8(bb) transfer of the HAP contract funds to

Cullen Park, which it argues is "fundamentally different from relocation due to an enforcement action." Dkt. 63 at 11.

The Court finds that Plaintiffs' Complaint identifies an agency action that HUD is required to take. Section 886.323(e) requires HUD to provide relocation assistance to families who wish to be rehoused in another dwelling unit after an owner fails to conform to the requirements imposed in a Notice of Default. The regulation identifies two actions HUD might take, and two preconditions which must be met before HUD can take those actions. The preconditions are that (1) "HUD notifies the owner that he/she has failed to maintain a dwelling unit in decent, safe, and sanitary condition," and (2) that "the owner fails to take corrective action within the time prescribed in the notice." 24 C.F.R. § 886.323(e). If these two conditions are met, HUD has discretion whether, or how, to proceed against the owner: "HUD may exercise any of its rights or remedies under the contract, . . . including"—but not exclusively—"abatement . . . and rescission." *Id.* HUD does not have discretion, "however," whether to provide relocation assistance to "the family [who] wishes to be rehoused in another dwelling unit": "HUD *shall* provide assistance in finding such a unit for the family." *Id.* (emphasis added). HUD does not identify, and the Court's own review did not find, any statute or regulation that would cause the Section 8(bb) transfer to override Section 886.323(e)'s requirements.

### ii. The Court cannot specify the relocation assistance HUD must provide.

HUD is required to provide Arbor Court tenants relocation assistance. Fatal to Plaintiffs' Complaint, however, Plaintiffs have not identified an action that HUD is

required to take that HUD has failed to take: according to Plaintiffs' own pleadings, HUD is providing assistance to families who wish to be rehoused in another dwelling unit.

Plaintiffs want the Court to compel HUD not just to comply with Section 886.323(e), but to provide specific kinds of assistance to families who wish to be rehoused in specific units. "[W]hen an agency is compelled by law to act . . . but the manner of its action is left to the agency's discretion," the court "has no power to specify what the action must be." *Norton*, 542 U.S. at 65. Plaintiffs do not identify authority requiring HUD to provide relocation assistance different or more specific than it already provides.

Whatever Plaintiffs, this Court, or even HUD may think would be a better course of action, the Plaintiffs' Complaint does not sufficiently allege a basis for the Court to order HUD to take the specific actions Plaintiffs want HUD to take. Their claim under the APA must be dismissed.

## II.     Plaintiffs have not pleaded a viable disparate treatment claim against HUD.

Plaintiffs also allege that HUD's withholding relocation assistance constitutes intentional racial discrimination in violation of the Fair Housing Act's prohibition against disparate treatment and the Fifth Amendment's Equal Protection Clause. HUD moves under Rule 12(b)(6) to dismiss these claims for failure to adequately state a facially plausible claim of intentional discrimination. The Court considers whether Plaintiffs' allegations of disparate treatment are sufficient to overcome the 12(b)(6) standard as to both their FHA and Equal Protection claims.

"Disparate treatment" is "deliberate discrimination." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 909 (5th Cir. 2019). "It refers to treating some people 'less favorably than others because of a protected trait.'" *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). "Such discrimination is shown by evidence of discriminatory action or by inferences from the fact of differences in treatment." *Lincoln Prop. Co.*, 920 F.3d at 909–10 (citation omitted). "With discriminatory treatment claims, there can be no liability without a finding that the protected trait (e.g., race) motivated the challenged action." *Id.* (citations omitted).

"To state a claim of racial discrimination under the Equal Protection Clause . . ., the plaintiff must allege and prove that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (internal quotations omitted); *see also Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

HUD argues that Plaintiffs' only allegation of discrimination is that the housing quality at Arbor Court is poor while housing quality in six Section 8 properties in a majority-white neighborhood outside Houston is decent, safe, and sanitary. HUD argues this allegation is irrelevant and does not compare Plaintiffs to another group that is similarly situated. HUD also argues that Plaintiffs' allegations of historical background are not the type of recent history relevant to a showing of intentional discrimination because they do not show that HUD's challenged decision was made in reaction to a

race-based factor. Finally, HUD argues Plaintiffs do not show evidence of intentional discrimination in the past, only that HUD's project-based assistance is concentrated in majority minority neighborhoods. HUD argues that this fact, even if true, does not show a violation of the regulations applicable to Section 8 subsidies.

The Court finds that Plaintiffs' Amended Complaint does not set forth allegations from which the Court can reasonably infer "the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Plaintiffs' central claim is that HUD's decision not to provide them relocation assistance was driven by intentional racial discrimination. Plaintiffs' allegations do not raise a reasonable inference that HUD decided to provide relocation assistance only to those tenants who chose to move to Cullen Park because of their race. Plaintiffs ask the Court to view HUD's decision to provide tenants with relocation assistance to a certain project as a decision meant to keep the tenants in segregated housing, without providing adequate, well-pleaded factual support for that linkage, as opposed to conclusory statements and assertions based on speculation, assumptions, and stereotypes. *See Lincoln Prop. Co.*, 920 F.3d at 911 (5th Cir. 2019) (affirming 12(b)(6) dismissal of intentional discrimination claim).

Plaintiffs do not allege that they are being treated differently than White tenants with regard to provision of relocation assistance or vouchers. *See generally* Compl. They do not allege the existence of a majority-White, non-Hispanic PBRA property in comparable condition where residents were provided relocation assistance to another, more suitable PBRA property, or issued housing vouchers—much less such a property where residents were offered both. *See, e.g., Hawkins v. U.S. Dep't of Hous. & Urban*

*Dev.*, Civ. Action H-18-3052, 2020 WL 1480012, at *11 (S.D. Tex. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1469793 (S.D. Tex. Mar. 26, 2020) (Lake, J.) ("In the absence of a comparator property or comparator residents who were treated more favorably, Plaintiffs have failed to state an equal protection claim based on the non-issuance of housing vouchers.").

Plaintiffs allege, without further elaboration, that HUD "could have" relocated Plaintiffs to another project in a more racially diverse neighborhood. This conclusory allegation is at most "merely consistent with liability," but "lacks the factual support necessary to support a reasonable, rather than speculative, inference of intentional discrimination." *Lincoln Prop. Co.*, 920 F.3d at 911. For instance, Plaintiffs allege no facts about the housing capacity of the projects in better condition. Plaintiffs allege that nearly all of the PBRA units are in unsafe and unsanitary condition, and that the two PBRA projects in White, non-Hispanic census tracts in Houston are restricted to elderly tenants. Compl. ¶ 108. Plaintiffs also allege that among the six PBRA buildings in the Woodlands, two are inhabited mostly by non-White residents. Compl. ¶ 100. These allegations do not support a reasonable inference of intentional discrimination.

The deficiencies in these allegations cannot be saved through Plaintiffs' allegations of the historical persistence of segregation in Houston, which themselves are subject to many of the same deficiencies. These allegations, taken as a whole, do not support a reasonable, rather than speculative, inference that HUD is intentionally discriminating against Arbor Court tenants on the basis of race.

## Conclusion

For the foregoing reasons, HUD's Motion to Dismiss is **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Dkt. 63. Plaintiffs may file an amended complaint by **Monday, June 1, 2020**.

SIGNED at Houston, Texas, this 18th day of May, 2020.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE