Case 4:18-cv-02468   Document 100   Filed on 04/12/21 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
April 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAIJA JACKSON, *et al*, § § Plaintiffs, § VS. § § THE UNITED STATES DEPARTMENT § OF HOUSING AND URBAN § DEVELOPMENT, *et al*, § § Defendants. § | CIVIL ACTION NO. 4:18-CV-2468 |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion to Dismiss Second Amended Complaint filed by Defendant the United States Department of Housing and Urban Development ("HUD"). (Dkt. 92). After careful consideration of the motion, response, reply, and applicable case law, the motion to dismiss is **GRANTED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are former tenants of the Arbor Court Apartments ("Arbor Court"), a multifamily residential building in Houston, Texas. Plaintiffs originally brought this action seeking Tenant Protection Vouchers from HUD to move from Arbor Court after they allege that HUD failed to require the owner to make repairs after the property was significantly damaged during Hurricane Harvey in 2017. At the time the case was filed, Arbor Court was receiving a rental housing subsidy through HUD's Project Based Rental Assistance Program. During the litigation, after the alleged continuous failure of Arbor Court's owner to make the requisite repairs to the property, HUD approved the transfer of

the rental housing subsidy from Arbor Court to one of the owner's other housing projects, Cullen Park Apartments ("Cullen Park"). (Dkt. 82 at pp. 1–2).

In accordance with the policies and procedures that apply to such transfers, Plaintiffs had the option of either moving to Cullen Park with their relocation expenses paid by the Arbor Court's owner or accepting a Tenant Protection Voucher as they had requested to move to another property of their choosing. Each Plaintiff elected to accept a Tenant Protection Voucher and move to a property other than Cullen Park. HUD did not provide any additional relocation assistance to the Plaintiffs. Plaintiffs allege that they had to borrow money from family members, take out high-interest payday loans, or use personal possessions as collateral to cover security deposits and moving expenses. (Dkt. 82 at paras. 130, 136, 146). Former Arbor Court tenants who chose to move to Cullen Park had their relocation expenses paid for by Arbor Court's owner. (Dkt. 82 at para. 9).

Plaintiffs then amended their complaint seeking to recover their moving expenses in addition to the Tenant Protection Vouchers they were issued. The Court granted HUD's motion to dismiss Plaintiff's First Amended Complaint without prejudice because, in part, Plaintiffs did not and could not cite to any authority that requires HUD "to provide relocation assistance different or more specific than it already provides." (Dkt. 81 at para. 6).

In the Second Amended Complaint, Plaintiffs now seek relief from two new sources. First, they seek an injunction to compel HUD to complete the legally required site and neighborhood standards review of the Cullen Park apartment complex. Plaintiffs argue that HUD failed to make the legally required determination that a transfer of the

subsidy and the tenants to Cullen Park would comply with HUD's Fair Housing Act site and neighborhood standards prior to approving the subsidy transfer. By doing so, Plaintiffs allege that they were injured by HUD.

Second, the Plaintiffs seek an injunction compelling HUD to provide them with relocation assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act. (Dkt. 82 at p. 50). Plaintiffs assert that as a result of HUD's approval of the subsidy transfer, they were required to leave Arbor Court in order to continue receiving housing benefits. As a result of HUD's action, Plaintiffs argue that they qualify as displaced tenants and are entitled to specific relocation assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act and the regulations governing its application. (Dkt. 82 at para. 2).

HUD now seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs do not have standing to challenge HUD's subsidy transfer to Cullen Park and that such a challenge is now moot. HUD also seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs have not presented facts sufficient to establish that they are eligible to recover relocation expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act.  The Court examines these arguments below.

## II. LEGAL STANDARD

### a. Rule 12(b)(1) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1) is properly granted "when the court lacks the statutory or constitutional power to adjudicate

the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A party may challenge the court's subject matter jurisdiction pursuant to this rule. The party seeking to invoke federal jurisdiction bears the burden of establishing subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject matter jurisdiction may be found by considering: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). Dismissal of an action is appropriate under Rule 12(b)(1) where a plaintiff either lacks standing to bring a claim or a plaintiff's claim is moot. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F.Supp.2d 342, 350 (S.D. Tex. Mar. 2, 2011).

      b. **Rule 12(b)(6) Standard of Review**

Federal courts must dismiss cases that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679. When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted).

### III. STATUTORY BACKGROUND

#### a. Rental Housing Assistance Programs

The Project Based Rental Assistance Program is a type of Section 8 rental housing subsidy that is paid to apartment owners pursuant to a housing assistance payment contract between HUD and the owner.[1] When a Section 8-eligible tenant vacates a unit that is subsidized by project-based assistance, the subsidy remains attached to the structure for the next eligible tenant. *See* 42 U.S.C. § 1437f(f)(6).

A Housing Choice Voucher is a different type of tenant-based assistance for qualifying families that allows the tenant to rent any unit that meets HUD's standards and for which the owner is willing to accept the voucher. *See* 42 U.S.C. §§ 1437f(f)(7), (o); 24 C.F.R. § 982.1(a), 982.1(b). One type of housing choice voucher is a Tenant Protection Voucher which is intended to protect families from hardship or loss of housing that occurs through no fault of their own. HUD Notice PIH-2019-08 § 6.

#### b. Section 8(bb) Subsidy Transfer

---

[1] Section 8 of the United States Housing Act of 1937 seeks to "aid[] low-income families in obtaining a decent place to live" by subsidizing private landlords who are willing to rent units to low-income tenants. 42 U.S.C. § 1437f(a)

Under Section 8(bb) of the United States Housing Act of 1937, HUD and the owner of an apartment complex that receives a Section 8 rental housing subsidy through the Project Based Rental Assistance Program can agree to transfer the housing assistance payment contract and its subsidy to a different apartment complex if the complex meets HUD's standards for being decent, safe, and sanitary. The existing tenants have the option of transferring to the new project or accepting a housing choice voucher that can be used at a different apartment complex.

### c. The Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA")

The Uniform Relocation Assistance and Real Property Acquisition Policies Act, commonly referred to as the URA, is intended to "establish[] a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4621(b). The URA's primary purpose is to "ensure that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons." *Id.*

## IV. ANALYSIS

### a. Plaintiffs Lack Standing to Challenge HUD's Approval of the 8bb Subsidy Transfer.

Article III of the United States Constitution limits the power of federal courts to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. The requirement that a plaintiff establish standing to bring suit "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992). To meet the constitutional minimum for standing, a plaintiff has the burden to establish: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury be fairly traceable to the challenged action; and (3) that the injury can be redressed by a favorable ruling. *Id.* at 560–61; *see also NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010).

In their Second Amended Complaint, Plaintiffs challenge HUD's approval of the Section 8(bb) subsidy transfer from Arbor Court to Cullen Park. Plaintiffs argue that the transfer was arbitrary and capricious, as HUD failed to conduct the legally required site and neighborhood standard review of Cullen Park before its approval of the transfer. (Dkt. 82 at paras. 3 and 8). Plaintiffs assert that HUD's conduct injured them by preventing Plaintiffs from relocating to a "decent, safe, and sanitary" project-based Section 8 public housing complex and that "an order compelling HUD to conduct this review would remedy this." (Dkt. 93 at paras. 5 and 17). The Court finds that this alleged injury cannot establish that Plaintiffs have standing to challenge HUD's alleged conduct.

Plaintiffs' alleged injury—being prevented from relocating to a decent, safe, and sanitary project-based Section 8 public housing complex as a result of HUD's conduct—is not a particularized and concrete, actual or imminent injury in fact to Plaintiffs because it is pure speculation that Plaintiffs would ever choose or be forced to live at Cullen Park or any other project-based Section 8 public housing complex. Plaintiffs do not allege that they would have been interested in moving to Cullen Park or any other project-based Section 8 public housing complex had HUD made the determination that met its requirements. Nor do Plaintiffs now allege that they are interested in moving to Cullen

Park or any other project-based Section 8 public housing complex if the Court compelled HUD to make the determination now. In the absence of these allegations, Plaintiffs are likely to either continue living in their current units or to use their housing vouchers to move to another unit that accepts the vouchers regardless of whether HUD conducts the requested determination.

Nor is it clear why, under the facts alleged, Plaintiffs would want to move into another project-based Section 8 housing complex after choosing to receive and use vouchers from HUD. With vouchers, "Section 8 thus already provides these Plaintiffs with what they want: a choice in where they live. This flexibility Section 8 affords the Plaintiffs is greater than what they would have if [they were] designated to reside in any particular public housing project." *Galveston Open Gov't v. U.S. Dept. of Hous. and Urban Dev.* 17 F.Supp.3d 599, 605 (S.D. Tex. Apr. 30, 2014). Accordingly, Plaintiffs do not have standing to challenge HUD's approval of the subsidy transfer and this claim should be dismissed under Rule 12(b)(1). *See e.g.*, *id.* (court found that plaintiffs, tenants who had received and used housing vouchers to live in a complex of their choosing, had no standing to challenge HUD's decisions regarding the rebuilding of public housing where plaintiffs could not establish that they would voluntarily move or would be forced to move to this housing project once it was completed.)

    **b. Plaintiffs' Challenge to the 8(bb) Subsidy Transfer is Moot.**

A claim becomes moot when "the parties lack a legally cognizable interest in the outcome" *NRA of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir 2013) (citing *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). "The mootness doctrine requires that the

controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). Here, Plaintiffs chose not to move to Cullen Park when the subsidy was transferred there. Instead, they elected to receive Tenant Protection Vouchers which they have now used to move to a new housing project of their choice. As noted above, Plaintiffs do not allege that they are interested in moving to Cullen Park or any other project-based Section 8 public housing complex in the future. Accordingly, Plaintiffs no longer have a legally cognizable interest in challenging the 8(bb) subsidy transfer from Arbor Court to Cullen Park.

Plaintiffs argue that their claims are not moot because "they never received relocation assistance from HUD and did not have the option of moving to site with assistance." (Dkt. 93 at p. 5). The Court finds this argument unpersuasive. Here Plaintiffs clearly had the option of moving with assistance. Plaintiffs concede that the Arbor Court tenants who chose to move to Cullen Park had their moving expenses paid by the owner. (Dkt. 93 at p. 22). Thus, Plaintiffs could have received moving expense assistance if they too had chosen to move to Cullen Park. Plaintiffs decided not to move to Cullen Park with the relocation assistance but rather to accept the Tenant Protection Vouchers which gave them flexibility to move to an alternate property of their choice. They have now moved to another property and will not be affected by any ruling by the Court regarding the subsidy transfer. In other words, Plaintiffs have no legally cognizable interest in the outcome of a ruling on whether the subsidy transfer was lawful. Accordingly, the Court

finds that Plaintiffs challenges to HUD's subsidy transfer should also be dismissed as moot under Rule 12(b)(1).

### c. Plaintiffs Are Not Entitled To Relocation Expenses As "Displaced Persons" Under the Terms of the URA.

Plaintiffs argue that they are displaced persons under the terms of the URA because the owner of Arbor Court sent them a written "Notice to Tenants of Intent to Transfer Section 8 [contract with HUD]" and the approval and transfer of the subsidy to Cullen Park constituted a federally funded project. (Dkt. 82 at paras. 33, 40). Plaintiffs argue that because the subsidy was transferred from Arbor Court to Cullen Park, they were forced to vacate Arbor Park in order to continue receiving their housing benefits. (Dkt. 93 at p. 8). As such, Plaintiffs claim that they are displaced tenants as defined by the URA. The Court finds this argument unpersuasive.

The Court finds that Plaintiffs are not "displaced persons" under the URA who are entitled to relocation expenses. Plaintiffs' arguments to the contrary ignore the clear language of the URA. Under the URA, a displaced person is entitled to receive reasonable relocation expenses. 42 U.S.C. § 4622(a). The URA defines "displaced person" as "any person who *moves from real property* . . . as a direct result of a written notice of intent to acquire or the acquisition *of such real property* in whole or in part for a program or project undertaken by a Federal agency or with Federal financial assistance . . . ." 42 U.S.C. § 4601(6)(A)(emphasis added). Under HUD's regulations, "[t]he term displaced person is defined as: a person (family, individual, business, nonprofit organization, or farm) that moves from real property, permanently, as a *direct* result of

10 / 13

acquisition, rehabilitation, or demolition for a project assisted under this part." 24 C.F.R. 886.338(g)(1)(i) (emphasis added).

Pursuant to this express statutory language, a tenant can only be a displaced person where the property they are *moving from* is subject to an acquisition, rehabilitation, or demolition for a project using Federal financial assistance. It does not provide, as argued by Plaintiffs, for assistance merely because a tenant had to relocate because of the transfer of a Section 8 rental housing subsidy. Here, that means for Plaintiffs to qualify as displaced persons, Arbor Court, not Cullen Park, must be the property subject to acquisition, rehabilitation, or demolition for a project using Federal financial assistance.

Plaintiffs have pled no facts establishing that Arbor Court's owner or HUD initiated negotiations, issued a written notice of intent to acquire, or actually acquired Arbor Court through the subsidy transfer process. Furthermore, the facts presented clearly show that Arbor Court, due to the City of Houston's refusal to issue permits, was unable to be rehabilitated and no facts were alleged demonstrating that the owner intended to rehabilitate the project with federal financial assistance. Finally, there were no facts alleged suggesting that either the owner or HUD had plans to demolish the property at Arbor Court with the use of federal financial assistance. To interpret the URA as suggested by Plaintiffs would not only be contrary to the express language of the statute but would expand, without any statutory support, the URA to include persons moving from real property or moving personal property from real property solely as a result of subsidy transfer from that property. This the Court will not do. Accordingly, Plaintiffs cannot qualify as displaced persons under the URA and are not entitled to

relocation assistance from HUD beyond the housing vouchers they have already received and used to live at an apartment complex of their choosing.

Plaintiffs, relying on the holding in *Goodwin v. Miller* 2:17-CV-01537, 2019 WL 1416885 (W.D. Pa. Mar. 29, 2019), argue that in the past HUD has provided "relocation assistance for [Project Based Rental Assistance Program] tenants who receive tenant protection vouchers as a result of HUD actions concerning the owner's housing assistance contract" and should likewise be compelled to do so in this case. (Dkt. 82 at para. 51). However, Plaintiff's reliance on *Goodwin* in support of this argument is misplaced. While in *Goodwin* HUD provided relocation expenses in addition to vouchers, it did so under factual circumstances clearly distinguishable from those here.

In *Goodwin*, the subsidy was not transferred to another property because HUD's contract with the owner was terminated. Thus, these tenants only had the option of accepting housing vouchers and did not have the option to move to the owner's other complex and have the owner pay their relocation expenses. Under these circumstances, there was no way for these tenants to avoid incurring relocation expenses and HUD paid these expenses for them. Plaintiffs here had the option to move to Cullen Park and have the owner cover their relocation expenses, but they chose to accept the vouchers. Plaintiffs could have avoided paying for their relocation expenses but chose not to do so in exchange for the flexibility provided by the voucher. Under these circumstances the Court finds that there is no statutory basis or persuasive argument to compel HUD to provide relocation expenses here like it did for the *Goodwin* tenants. Accordingly,

Plaintiffs have failed to state a claim against HUD for payment of their relocation expenses and HUD is entitled to dismissal of this claim.

## V.  CONCLUSION

For the reasons stated above, HUD's motion to dismiss (Dkt. 92) is **GRANTED**.

SIGNED at Houston, Texas, this 12th day of April, 2021.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE